Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br><br>Peticionario<br><br>v.<br><br>**JUAN CARLOS VIDAL ROSA**<br><br>Recurrido | KLCE202301281 | **CERTIORARI**<br>Procedente del Tribunal de Primera Instancia, Sala de **Aguadilla**<br><br>Caso núm.:<br>A MI2023-0091<br>A BD2023G0075<br>A LA2023G0106<br>(502)<br><br>Sobre: **Habeas Corpus** |

Panel integrado por su presidenta la juez Domínguez Irizarry, la juez Grana Martínez y el juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de febrero de 2024.

Comparece ante nos la Oficina del Procurador General de Puerto Rico, en adelante, el Procurador o peticionaria, solicitando que revoquemos una *"Sentencia"* del Tribunal de Primera Instancia, Sala de Aguadilla, en adelante, TPI-Aguadilla, emitida y notificada el 14 de octubre de 2023.

En la *"Sentencia"* ante nuestra consideración, el TPI-Aguadilla ordenó la excarcelación de Juan Carlos Vidal Rosa, en adelante, Vidal Rosa o recurrido, acorde con la *"Certificación para Habeas Corpus"* emitida por la Oficina de Récord Criminal del Departamento de Corrección y Rehabilitación, en adelante, Oficina de Récord Criminal del DCR.

Por los fundamentos que expondremos a continuación, expedimos el recurso de autos y *revocamos* la *"Sentencia"* recurrida.

# I.

El 24 de marzo de 2023 se radicaron tres denuncias en contra de Vidal Rosa, al amparo de los Artículos 189 (Robo) y 245 (Empleo de Violencia o Intimidación Contra la Autoridad Pública) del Código Penal de Puerto Rico de 2012, en adelante, Código Penal, Ley Núm. 146 de 30 de julio de 2012, 33 LPRA secs. 5259 y 5335.[1] Además, se le imputó una violación al Artículo 6.05 (Portación, Transportación o Uso de Arma de Fuego sin Licencia) de la Ley de Armas de Puerto Rico de 2020, en adelante, Ley de Armas, Ley Núm. 168 de 11 de diciembre de 2019, 25 LPRA sec. 466d.[2]

Las denuncias le imputan a Vidal Rosa la apropiación de objetos pertenecientes a una ciudadana, mediando el uso de un arma de fuego, sin tener licencia para ello. Además, las denuncias alegan que Vidal Rosa, mediando violencia e intimidación contra un agente de la policía, intentó evitar ser puesto bajo arresto.

El imputado ingresó a la cárcel ese mismo día, *24 de marzo de 2023*, cuando el TPI-Aguadilla encontró causa probable para su arresto, en ausencia. Sin embargo, el Foro Primario solo encontró causa para los delitos de Robo y Portación, Transportación o Uso de Armas de Fuego sin Licencia. En consecuencia, se le impuso al imputado una fianza global de cincuenta mil dólares ($50,000), la cual no prestó.

La Vista Preliminar del caso contra Vidal Rosa fue señalada para el 3 de mayo de 2023.[3] Sin embargo, llegado el día para la vista, la representación legal del imputado de delito indicó que Vidal Rosa *era paciente de salud mental*, y no estaba cooperando con ella. Además, señaló que, como prueba de esto, se encontraba el padre del denunciado, quien podría testificar sobre los pasados

---

[1] Apéndice del recurso, págs. 28-31.
[2] *Id.* pág. 32.
[3] *Id.* pág. 34.

tratamientos de salud mental que este ha recibido. Sin embargo, este último no tuvo que testificar, ya que el Ministerio Público no se opuso a un referido de procesabilidad, al amparo de la Regla 240 de las Reglas de Procedimiento Criminal de 1963. Ley Número 87 de 26 de junio de 1963, 34 LPRA Ap. II, R. 240.

El 12 de junio de 2023 se celebró la vista de procesabilidad, en la cual el perito del Estado declaró que el imputado de delito del caso de marras se encontraba procesable.[4] Esta recomendación fue acogida por el TPI-Aguadilla. Luego de encontrar causa probable para acusar, el 23 de junio de 2023, el Ministerio Público presentó sus acusaciones en contra de Vidal Rosa.[5]

Luego de la lectura de acusación el 27 de junio de 2023, se señaló la fecha del 5 de septiembre de 2023, para el juicio. Llegada la precitada fecha, la representación legal de Vidal Rosa *indicó nuevamente que no ha podido comunicarse efectivamente con su cliente, y entendía que este ameritaba otra evaluación de procesabilidad.*

Además de solicitar por segunda vez una evaluación de procesabilidad, durante la vista, Vidal Rosa argumentó que luego del 24 de septiembre de 2023, el término constitucional de 180 días para detención preventiva habrá terminado. Indicó que, por lo tanto, luego de esa fecha, deberá ser excarcelado bajo un recurso de habeas corpus.

En respuesta, el Foro Primario le indicó que de esos 180 días *se descontaría el tiempo de la primera y segunda solicitud de procesabilidad.* Refiriéndose a Vidal Rosa, el TPI-Aguadilla dijo "[u]sted no está en habeas corpus porque usted estuvo en una Regla 240".[6] Continuó diciéndole que "[c]uando usted estuvo en una Regla

---

[4] Apéndice del recurso, pág. 36.
[5] *Id.* págs. 37-40.
[6] Regrabación de la vista del 5 de septiembre de 2023, min. 13:44.

240 ***todo ese término no se computa para el habeas corpus y el que va a estar ahora, tampoco***".

Ahora bien, la segunda vista de procesabilidad se celebró el 2 de octubre de 2023, en la cual el perito del Estado declaró, nuevamente, que Vidal Rosa se encontraba procesable.[7] El TPI-Aguadilla acogió la recomendación, y ordenó la continuación de los procesos el 3 de octubre de 2023, para la Conferencia con Antelación al Juicio.

Llegado el día señalado para la mencionada conferencia, Vidal Rosa presentó una *"Petición de hábeas corpus"*, indicando que permanecía encarcelado, ininterrumpidamente, *desde el 24 de marzo de 2023*.[8] Demandó, así, su excarcelación. Al día siguiente, durante la celebración de la vista, se adjudicó la petición del acusado.[9] En la misma, Vidal Rosa indicó que, aunque se habían dado dos procedimientos bajo la Regla 240 de Procedimiento Criminal, supra, en ambas había resultado procesable, por lo que el término de detención preventiva nunca se interrumpió.

En aquel momento, el fiscal no tuvo reparo a la solicitud de habeas corpus, y aunque aclaró no tener el expediente consigo, admitió tener conocimiento de la pasada solicitud al amparo de la Regla 240 de Procedimiento Criminal, supra.[10]

A diferencia de su postura en la vista del 5 de septiembre de 2023, el Foro Primario asumió la postura de Vidal Rosa, concluyendo que, por haber resultado procesable en ambos procedimientos, el término aludido nunca se interrumpió. Por lo tanto, el TPI-Aguadilla *ordenó la excarcelación de Vidal Rosa*.

Sin embargo, el 6 de octubre de 2023, el Ministerio Público presentó una *"Moción Urgente de Reconsideración a Expedición de*

---

[7] Apéndice del recurso, pág. 45.
[8] *Id.* pág. 46.
[9] *Id.* pág. 49.
[10] Regrabación de la vista del 5 de septiembre de 2023, min. 4:40-4:44.

*Recurso de Habeas Corpus"*, en la que rectificó su postura con relación a la excarcelación de Vidal Rosa.[11] En su petitorio, el Ministerio Público señaló que el recurso de habeas corpus fue presentado prematuramente, ya que los procedimientos de procesabilidad interrumpieron el término de detención preventiva. De manera específica, indicó que se tenía que excluir del término en cuestión las fechas *del 3 de mayo de 2023 al 12 de junio de 2023 y del 5 de septiembre de 2023 al 2 de octubre de 2023.* Durante esos espacios de tiempo, los procedimientos de la Regla 240 de Procedimiento Criminal, supra, suspendieron los términos de juicio rápido.

El 10 de octubre de 2023, el TPI-Aguadilla le confirió cinco (5) días a Vidal Rosa para presentar su posición respecto a la moción del Ministerio Público, quien cumplió con dicho requerimiento el 12 de octubre de 2023, mediante una *"Moción Informativa en Cumplimiento de Orden".*[12]

Luego, el 16 de octubre de 2023, el TPI-Aguadilla emitió una *"Resolución y Orden"* en la que denegó la moción del Ministerio Público.[13] El Foro Primario entendió que el término de detención preventiva no quedó interrumpido con los procesos bajo la Regla 240 de Procedimiento Criminal, supra, ya que Vidal Rosa había sido encontrado procesable en ambas.

Inconforme, el Procurador recurre ante esta Curia haciendo el siguiente señalamiento de error:

> EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ AL ORDENAR LA EXCARCELACIÓN DEL SEÑOR VIDAL ROSA, MEDIANTE LA CONCESIÓN DE UN AUTO DE *HABEAS CORPUS,* SIN TOMAR EN CONSIDERACIÓN QUE, ES INCORRECTO EN DERECHO, NO EXCLUIR DEL TÉRMINO DE DETENCIÓN PREVENTIVA, EL TIEMPO EN EL QUE EL RECURRIDO

---

[11] Apéndice del recurso, pág. 3.
[12] *Id.* pág. 12.
[13] *Id.* pág. 16.

ESTUVO EN EVALUACIÓN –AL AMAPARO DE LA REGLA 240 DE PROCEDIMIENTO CRIMINAL, 34 LPRA AP. II. ES DECIR, DESDE LA DETERMINACIÓN DE "BASE RAZONABLE" HASTA QUE FUE ENCONTRADO PROCESABLE.

El 27 de noviembre de 2023 emitimos una "Resolución" en la que le concedimos diez (10) días a la parte recurrida para expresarse con relación al recurso de Certiorari que nos ocupa, según dispone la Regla 37 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 37. El 12 de diciembre de 2023, Vidal Rosa compareció ante nos mediante un "Escrito en Cumplimiento de Orden".

Con el beneficio de la comparecencia y exposición de las posturas de ambas partes, procedemos a resolver.

## II.

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera Gómez y otros v. Arcos de Dorados Puerto Rico, Inc. y otros*, 2023 TSPR 65, 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). El tribunal revisor tiene la facultad de expedir el auto de *certiorari* de manera discrecional. El *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

Expedir el recurso "no procede cuando existe otro recurso legal que protege rápida y eficazmente los derechos de la parte peticionaria". *Pueblo v. Díaz de León*, supra. Conviene destacar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión

justiciera". *Torres González v. Zaragoza Meléndez*, supra, pág. 847;

*Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019);

*Pueblo v. Custodio Colón*, 192 DPR 567, 588 (2015). *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *Rivera Gómez y otros v. Arcos de Dorados Puerto Rico, Inc. y otros*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335-336 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, *o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo*, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). (Énfasis suplido).

### B. Habeas Corpus

El auto de hábeas corpus es un recurso extraordinario de naturaleza civil, mediante el cual una persona detenida ilegalmente, solicita de la autoridad judicial competente su libertad. *Pueblo v. Díaz, Rivera*, 204 DPR 472, 485 (2020); *Quiles v. Del Valle*, 167 DPR 458, 466 (2006); *Ramos Rosa v. Maldonado Vázquez*, 123 DPR 885,

889 (1989). Este recurso es uno de carácter constitucional, pues está reconocido y establecido en nuestra Carta Magna. Art. II, Sec. 13, LPRA, Tomo 1, ed. 2008.

Por ser un remedio extraordinario, su uso debe estar limitado a situaciones excepcionales donde se hayan agotado todos los remedios ordinarios disponibles antes de recurrir a este recurso. *Pueblo v. Díaz Alicea,* supra, pág. 485; *Quiles v. Del Valle,* supra, pág. 467; *Ortiz v. Alcaide Penitencia Estatal,* 131 DPR 849, 861 (1992).

Particularmente, el Art. 469 del Código de Enjuiciamiento Criminal dispone lo siguiente con respecto a quién puede solicitar el auxilio de un hábeas corpus:

a) Cualquier persona que sea encarcelada o ilegalmente privada de su libertad puede solicitar un auto de habeas corpus a fin de que se investigue la causa de dicha privación.

b) Ningún juez vendrá obligado a considerar una solicitud de hábeas corpus para investigar la validez de la detención de una persona recluida en virtud de una sentencia dictada por cualquier Sala del Tribunal de Primera Instancia, si aparece que la legalidad de dicha detención ha sido ya determinada por cualquier juez del Tribunal de Primera Instancia con motivo de una solicitud de habeas corpus anterior, y la nueva solicitud no aduce ningún fundamento que no haya sido presentado y adjudicado anteriormente, y el juez o tribunal está convencido de que la expedición del auto no servirá los fines de la justicia.

c) Ningún juez considerará una solicitud de habeas corpus presentada por un confinado recluido en virtud de sentencia final que no haya agotado el remedio provisto en la Regla 192.1 de Procedimiento Criminal, Ap. II de este título. Cuando habiéndolo solicitado le hubiese sido denegado, el tribunal no considerará una solicitud de habeas corpus a menos que aparezca que el remedio provisto por dicha regla era inadecuado o inefectivo para impugnar la validez de la detención.

***Una persona no tiene derecho a solicitar hábeas corpus a menos que esté sufriendo, como cuestión de hecho, una***

*restricción ilegal de su libertad.* Tiene que existir una custodia o detención ilegal y una persona que tenga detenido ilegalmente a aquél en cuyo favor se solicita el auto. *Díaz v. Campos*, 81 DPR 1009, 1015 (1960).

En lo concerniente al caso de marras, se nos presenta un particular escenario en el que una persona detenida por el estado puede presentar un recurso de habeas corpus, alegando detención ilegal por violación al término de detención preventiva. En nuestra constitución se estableció que:

> En todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público [...] La detención preventiva antes del juicio no excederá de seis meses.
>
> [...]
>
> Constitución de Puerto Rico. Art. II, Sec. 11 de la Constitución de Puerto Rico, 1 LPRA.

Luego de su arresto, una persona no puede permanecer detenida preventivamente – antes de su juicio – indiscriminada e ininterrumpidamente por tiempo indefinido. Este derecho, consagrado en nuestra ley fundamental, responde a la necesidad de proteger a los ciudadanos de un ejercicio abusivo y arbitrario de restricción a la libertad, por parte del Estado. *Pueblo v. Diaz Alicea*, supra, pág. 492; *Sánchez v. González*, 78 DPR 849, 854 (1955).

El mencionado artículo constitucional dispone que una persona no puede permanecer detenida por más de seis (6) meses, sin que se haya celebrado el juicio en su contra. *Salvá Rivera v. Adm. Correc. y otro*, 206 DPR 841, 844 (2021). Es decir, este término concierne únicamente al periodo antes del juicio. *Pueblo v. Díaz Alicea*, 204 DPR 472 (2020).

Durante la Convención Constituyente de nuestra Constitución se estuvo discutiendo brevemente el plazo para la detención preventiva. En estas discusiones, nuestros constituyentes

expresaron que una de las razones por las que se delimitó un término a estos efectos, fue para obligar al Ministerio Público a movilizar en su labor prosecutorial, y no mantenga indiscriminadamente a un imputado de delito encarcelado. 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico, en adelante, Diario de Sesiones de la Convención, pág. 1949 (1952).

Durante los debates, el Sr. Benítez propuso, entre otras cosas, enmendar el texto de la constitución para que en lugar de seis (6) meses, la detención preventiva antes del juicio se limitara a dos (2) meses. Diario de Sesiones de la Convención, supra, pág. 1946.

La discusión de la enmienda, inicialmente acogida, redundó en el hecho de que los fiscales tienen sesenta (60) días para radicar una acusación. Sin embargo, el Sr. Alvarado hizo la siguiente observación: "¿Se ha fijado Su Señoría que el texto no se refiere a la formulación de la acusación, sino a la celebración del juicio?". Diario de Sesiones de la Convención, supra, pág. 1947. Posteriormente, se produce una breve discusión al respecto antes de votar, en la que el delegado Alvarado explica que el término de seis (6) meses responde a la legislación que concede sesenta (60) días para la radicación de una acusación y ciento veinte (120) días para la celebración del juicio. Diario de Sesiones de la Convención, supra, págs. 1948-53. Esto, para sumar el total de los ciento ochenta (180) días dentro del periodo de seis (6) meses.

En sus exposiciones al respecto, el Sr. Alvarado hizo las siguientes declaraciones en cuanto al término en cuestión, y el *habeas corpus*:

> Este término que estamos fijando es tan y tan perentorio que si llegan los seis meses y el acusado no ha sido sometido a juicio, la corte tiene que ponerlo en la calle por un hábeas corpus inmediatamente que hayan pasado los seis meses.

Diario de Sesiones de la Convención, supra, pág. 1948.

La progenie jurisprudencial sobre la solicitud de un habeas corpus, al amparo de la violación a los términos de juicio rápido, ha protegido con recelo los seis (6) meses de detención preventiva. Este Tribunal reconoce la severidad con la que nuestro estado de derecho evalúa el transcurso del término de detención preventiva sin la celebración de juicio. No obstante, lo cierto es que ningún derecho es tan absoluto que no encuentre excepción en su aplicación.

Poco luego de establecida nuestra Constitución, nuestro Alto Foro ya había comenzado a delimitar los contornos del derecho a solicitar un habeas corpus. En el caso de *Sánchez v. González*, supra, nuestro Tribunal Supremo reconoce que las situaciones o actuaciones que impidan al Ministerio Público ejercer su función, condicionan el ejercicio de este derecho. A esos efectos, así rezan las expresiones del Alto Foro:

> El derecho que dimana de ese precepto, sin embargo, no es absoluto. Como es un derecho que madura normalmente por el mero lapso del tiempo, ni la ilegalidad ni el fraude de un acusado--en actos tendentes a producir la incapacidad del Estado para someterle a juicio--ampararían su ejercicio incondicional. Ese derecho, que no puede ser objeto de renuncia, tampoco puede ser objeto de rapto, y de mediar circunstancias del carácter de las apuntadas, el acusado no podría reclamarlo hasta que el Estado, pudiendo descargar prontamente su responsabilidad trayéndole a juicio, dejare de hacerlo.

> *Sánchez v. González*, supra, pág. 858.

Con relación a la condicionalidad del derecho a solicitar un recurso de habeas corpus, es relevante a la controversia ante nos el caso de *Ruiz v. Alcaide*, 155 DPR 492 (2001), el cual atiende por *primera vez* el cuestionamiento de la procesabilidad, frente a los términos de detención preventiva y habeas corpus.

En el precitado caso, Nuestro Alto Foro determinó que un acusado sumariado, cuyo juicio aún no se ha visto por un cuestionamiento de procesabilidad, no se encuentra detenido

preventivamente para los efectos de la disposición constitucional en cuestión. *Ruiz v. Alcaide*, supra, págs. 505-506. Es decir, en este caso, el Tribunal Supremo denegó la excarcelación del imputado, por entender que los procedimientos bajo la Regla 240 de Procedimiento Criminal, supra, le niegan la protección constitucional sobre los términos máximos de detención preventiva. *Ruiz v. Alcaide*, supra, pág. 506.

### C. Regla 240 de Procedimiento Criminal

Como es sabido, una persona acusada de cometer un delito no podrá enfrentar juicio salvo que sea procesable. *Pueblo v. Rivera Montalvo*, supra, pág. 364. La procesabilidad se refiere a la capacidad con la que un imputado de delito puede entender la naturaleza y el proceso criminal al que se enfrenta. *Pueblo v. Rivera Montalvo*, supra, pág. 364; *Pueblo v. Pagán Medina II*, 178 DPR 228, 237 (2010); E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, 1era ed., Colombia, Ed. Forum, 1993, Vol. III, pág. 348.

Cuando hablamos del estado mental de un imputado en el contexto jurídico penal, hay dos circunstancias en las que se puede levantar la defensa de incapacidad mental: en el momento de cometer los hechos (inimputabilidad) y al momento de ser procesado criminalmente (procesabilidad). *Ruiz v. Alcaide*, supra, pág. 499.

El reconocimiento del impacto que el estado mental de un individuo tiene sobre su responsabilidad criminal, se remonta al derecho romano, quien apadrinó los primeros conceptos de incapacidad mental para el derecho germánico, canónico y español. D. Nevares-Muñiz, Derecho Penal Puertorriqueño, en adelante, Derecho Penal Puertorriqueño, 7ma ed. Rev., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2015, pág. 283. En sus estados más primitivos, el desarrollo jurídico de esta materia reconoció los

estados de excitación, depresión y la discapacidad intelectual. Derecho Penal Puertorriqueño, supra, pág. 283. La Profa. Dora Nevárez nos explica que "[e]n la época contemporánea se considera la enfermedad mental como un proceso cerebral que transforma el funcionamiento de la psiquis en términos que afectan la conducta normal del sujeto". Derecho Penal Puertorriqueño, supra, pág. 284.

Aunque nuestro sistema de justicia criminal presume la sanidad mental de un imputado de delito, lo cierto es que la misma puede ser rebatida. De entre las muchas complicaciones que se pueden producir cuando la capacidad mental de un imputado está siendo cuestionada, una relevante al caso de epígrafe es la posición y el rol evaluador que debe asumir el juzgador.

No es necesario probar que el imputado se encuentra totalmente incapacitado para que prospere la alegación de incapacidad mental, sino que la misma es substancial, y en el caso de autos, suficiente para que el imputado no pueda entender los procedimientos o cooperar efectivamente con su defensa. También, presenta un reto para el Tribunal la evaluación de una situación, cuyos profesionales en el campo – entiéndase psicólogos, psiquiatras, terapeutas, etc. – difieren grandemente en sus posturas. Bien lo explicó nuestro Alto Foro cuando expresó que *"[e]l problema para los tribunales se complica porque todavía no [tienen] suficiente información sobre la mente humana para poder predecir la peligrosidad de una persona y hay posiciones conflictivas sobre la percepción del problema entre los psiquiatras." Pueblo v. Marcano Pérez,* 116 DPR 917, 926 (1986). El estado mental de un imputado de delito puede variar, mejorar o deteriorarse, en cualquier etapa de los procedimientos, incluso entre

medio de la evaluación al amparo de la Regla 240 de Procedimiento Criminal, supra, y la vista de procesabilidad.[14]

Ahora bien, ¿por qué tiene un imputado que estar procesable a la hora de enfrentar los procedimientos en su contra? La respuesta a esta pregunta comienza con nuestra más importante fuente de derecho. Procesar criminalmente a un individuo que está, al momento de los procedimientos penales, incapacitado mentalmente, constituiría una violación al debido proceso de ley, enmarcado en la Sección 7, Art. I de la Constitución de Puerto Rico, 1 LPRA. Es decir, la suspensión de los procesos criminales enfrentados por un acusado no procesable tiene el fin de salvaguardar el derecho al debido proceso de ley de este. Ciertamente un imputado, cuya condición mental le impide comprender la naturaleza y el objeto de los procedimientos en su contra para consultar con su abogado y ayudar en su defensa, no puede ser sometido a juicio, pues constituiría una violación a la cláusula constitucional de debido proceso de ley. *Ruiz v. Alcaide*, supra, pág. 501.

Por su parte, la Regla 239 de Procedimiento Criminal, 34 LPRA Ap II, R. 239, establece de manera estatutaria que "[n]inguna persona será juzgada, convicta o sentenciada por un delito mientras esté mentalmente incapacitada".

Ahora bien, el mecanismo para hacer valer el reclamo de la no procesabilidad de un individuo es la Regla 240 de Procedimiento Criminal, supra. *Previo a su actual texto*, la mencionada regla, en lo aquí pertinente, rezaba de la siguiente manera:

> **(a) Vista; peritos**. En cualquier momento después de presentada la acusación o denuncia y antes de dictarse la sentencia, si el tribunal tuviere base razonable para creer que el acusado está mentalmente incapacitado, **inmediatamente suspenderá los procedimientos y**

---

[14] American Psychiatric Association, *What is Mental Illness?*, https://www.psychiatry.org/patients-families/what-is-mental-illness [última visita: 30 de enero de 2024].

**señalará una vista para determinar el estado mental del acusado**. Deberá el tribunal designar uno o varios peritos para que examinen al acusado y declaren sobre su estado mental. Se practicará en la vista cualquier otra prueba pertinente que ofrezcan las partes.

**(b)   Efectos de la determinación**. Si como resultado de la prueba el tribunal determinare que el acusado está mentalmente capacitado, *continuará* el proceso. Si el tribunal determinare lo contrario, podrá ordenar la reclusión del acusado en una institución adecuada. Si luego de así recluirse al acusado el tribunal tuviere base razonable para creer que el estado mental del acusado permite la *continuación* del proceso, citará a una nueva vista que se llevará a cabo de acuerdo con lo provisto en el inciso (a) de esta regla, y determinará entonces si debe continuar el proceso.

**(c)** [...]

**(d) Procedimiento en la vista preliminar**. Si el magistrado ante quien hubiere de celebrarse una vista preliminar tuviere base razonable para creer que el acusado está mentalmente incapacitado, *suspenderá* dicha vista y levantará un acta breve al efecto, de la cual dará traslado inmediato, con los demás documentos en autos, al secretario de la sala del Tribunal de Primera Instancia correspondiente, ante la cual se celebrará una vista siguiendo lo dispuesto en el inciso (a) de esta regla. Si el tribunal determinare que el acusado está mentalmente capacitado, devolverá el expediente al magistrado o tribunal de origen, con su resolución, y los trámites de la vista preliminar *continuarán* hasta su terminación. Si el tribunal determinare lo contrario, actuará de conformidad con lo provisto en el inciso (b) de esta regla, solo que a los efectos de la vista preliminar.

[Énfasis suplido].

Como podemos apreciar de la mencionada regla, y conocimos en el caso de *Ruiz v. Alcaide*, supra, el efecto que produce en los términos de detención preventiva un cuestionamiento de procesabilidad ha sido atendido de manera clara. La Regla 240 de Procedimiento Criminal, supra, *tiene el efecto de suspender estos términos*. La regla en cuestión utiliza, precisamente, este tipo de

vocabulario para ilustrar sus efectos. El inciso (d) sobre la etapa de vista preliminar, la cual nos compete en la controversia aquí vertida, utiliza palabras derivadas del verbo suspender, el cual significa "[d]etener o diferir por algún tiempo una acción u obra" y el repetido uso de las palabras conjugadas del verbo "continuar".[15] Esto nos obliga a concluir que ha sido la voluntad de nuestro legislador poner en alto los procedimientos, una vez se cuestione la procesabilidad de un imputado.

Luego de que *Ruiz v. Alcaide*, supra, estableció que quien este recluido en una institución para recibir tratamiento mental, no está preventivamente detenido, le tocó a nuestro Alto Foro resolver en qué momento se comienza a descontar el cómputo de la procesabilidad, la cual detiene los términos de detención preventiva. En *Pueblo v. Pagán Medina I*, 175 DPR 557 (2009), el Tribunal Supremo de Puerto Rico determinó que este quedará suspendido *cuando el imputado sea trasladado a recibir tratamiento*, luego de ser encontrado no procesable. Es decir, en esta ocasión, el Alto Foro estableció que la determinación de no procesabilidad no era suficiente para comenzar a descontar el término en cuestión, sino que era necesario el traslado de custodia del imputado.

Sin embargo, en reconsideración del caso *Pueblo v. Pagán Medina I*, supra, nuestro Tribunal Supremo rectificó su postura inicial, estableciendo que los términos de detención preventiva quedarán pausados una vez el Tribunal determine que hay *"base razonable"* para creer que el imputado no se encuentra procesable. *Pueblo v. Pagán Medina II*, 178 DPR 228, 245 (2010).

Resaltamos que, en su segundo pronunciamiento al respecto, el Tribunal Supremo de Puerto Rico indicó que en su solicitud de

---

[15]REAL ACADEMIA ESPAÑOLA: Diccionario de la lengua española, 23.ª ed., [versión 23.7 en línea]. https://dle.rae.es/suspender [última visita: 29 de enero de 2024].

reconsideración, la Procuradora General argumentó que "mientras se encuentre pendiente el proceso dictado por la Regla 240[,] el acusado no se 'encuentra pendiente de la celebración del juicio', *ya que el procedimiento penal queda suspendido en su totalidad, y el Ministerio Público está impedido de procesar al acusado*". *Pueblo v. Pagán Medina II*, supra, pág. 243. (Énfasis suplido).

Nuestro Alto Foro le otorgó la razón en cuanto a esto último a la Procuradora General, y amplía de la siguiente forma:

> En primer lugar, el proceso dictado por la Regla 240 no comienza con la vista de procesabilidad ("vista de Regla 240") —la cual hace obligatoria la comparecencia de prueba pericial—sino con la determinación de "base razonable" por parte del juez de instancia. *Mientras el imputado, en quien se ha encontrado "base razonable" para ordenar la evaluación de su condición mental, se encuentre en espera de tal evaluación, el Ministerio Público se encuentra, a su vez, legal y constitucionalmente vedado —"con las manos atadas"— de proseguir con el procesamiento criminal que tiene el deber de ejecutar."*

> *Pueblo v. Pagán Medina II*, supra, pág. 243. (Énfasis suplido).

La aludida paralización responde a la aparente no procesabilidad del imputado. Por ello, la Regla 240 de Procedimiento Criminal, supra, le permite al juez suspender los procedimientos de forma inmediata. De esta forma, asegura que no continúen ocurriendo situaciones en el proceso que la persona imputada pudiera no tener la capacidad de entender, y que tenga como consecuencia no poder cooperar con su defensa. Una vez el foro primario, *motu proprio* o a solicitud de parte, paraliza los procedimientos al amparo de una "base razonable", automáticamente se activa una presunción de no procesabilidad que podrá ser o no revertida en la vista de procesabilidad. En el caso en que la "base razonable" sea confirmada, significa que el imputado se encontraba no procesable desde el momento en el cual

se paralizaron los procedimientos y, consecuentemente, el Ministerio Público nada podía hacer.

Mientras el imputado de delito se encuentre no procesable, el Estado se encuentra restringido constitucionalmente para poder continuar con los procedimientos en su contra. *Pueblo v. Pagán Medina II*, supra, págs. 243-244. Además, la garantía constitucional de detención preventiva pretende promover la diligencia del Ministerio Público en su ejercicio fiscalizador, y limitar su autoridad para custodiar. *Pueblo v. Méndez Pérez*, 193 DPR 781, 788 (2015).

Nuestra Alta Curia expresó que "[s]i al amparo de la Regla 240, *supra*, se determina finalmente que el acusado no es procesable, este permanecerá bajo la jurisdicción del tribunal, quien deberá regirse por lo que dispone la Regla 241 de Procedimiento Criminal, supra. *Pueblo v. Rivera Montalvo*, supra, pág. 366. Por otro lado, si se determina que el imputado está procesable, se levanta la suspensión de los procedimientos criminales alcanzados previo a la solicitud al amparo de la Regla 240 de Procedimiento Criminal, supra, y se continua con los mismos.

En una reciente resolución, nuestro Alto Foro tuvo que determinar si descontaba del tiempo de detención preventiva, el término que estuvo el imputado bajo la custodia del estado de Carolina del Norte. *Ortiz García v. Inst. Penal Bayamón*, 203 DPR 1033, 1034 (2020). Nuestra más Alta Curia resolvió que ese tiempo no se descontaría, arguyendo que, por estar el imputado fuera de la jurisdicción de Puerto Rico, el Ministerio Público no tenía control sobre este. *Ortiz García v. Inst. Penal Bayamón*, supra, pág. 1034.

Aunque esta determinación del Alto Foro no resulta vinculante, su análisis nos resulta ilustrativo con relación a la importancia de suspender los términos de detención preventiva. ***Si no se pausan estos términos una vez se determina base razonable para cuestionar la procesabilidad de un imputado,***

*se ultrajan las facultades fiscalizadoras del Ministerio Público.*

El Profesor Chiesa, en su análisis del caso *Pueblo v. Pagán Medina II*, supra, hace unas ilustrativas expresiones sobre la importancia de la paralización dentro de los procedimientos criminales, cuando un magistrado determina "base razonable" para la no procesabilidad:

> Me parece razonable lo resuelto por la mayoría, pues el término máximo de detención preventiva, aparte de fortalecer la presunción de inocencia, va dirigido al rápido enjuiciamiento. Pero si no es posible enjuiciar al imputado tras la determinación de la *base razonable*, y habida cuenta del derecho constitucional del imputado a quedar en libertad bajo fianza, no es imputable al Ministerio Fiscal que no se pueda enjuiciar al imputado dentro de los seis meses a partir de su detención.
>
> Ernesto, L. Chiesa Aponte, *Derecho Procesal Penal*, 80 Rev. Jur. UPR 681, 691 (2011).

Finalmente, con relación a *Pueblo v. Pagán Medina II*, supra, nuestro Tribunal Supremo hizo unas expresiones que debemos destacar, por ser parte medular de la controversia y nuestra adjudicación. Resuelto el asunto en cuanto al momento en que comienza a descontarse el término para computar los 180 días de detención preventiva, nuestro Alto Foro atendió una interrogante que no le fue planteada, y que ha resultado en una aplicación confusa del derecho esbozado en el caso:

> *¿Qué ocurre si una vez se determinó "base razonable" para paralizar los procedimientos, la prueba pericial que se presente durante la vista de la Regla 240 —y que tiene que celebrarse como próximo paso para corroborar la determinación inicial del juez— demuestra que el imputado sí se encuentra procesable? El efecto sería que la aparente improcesabilidad del imputado nunca se materializó, que debe entenderse que siempre estuvo procesable y el término de detención preventiva —que transcurre en contra del Ministerio Público y a favor del propio imputado— nunca se interrumpió.*

*Pueblo v. Pagán Medina II,* supra, pág. 244.

Al año siguiente a este caso, nuestra Legislatura aprobó la *Ley Núm. 281- 2011,* la cual enmendó, entre otros, la Regla 240 de Procedimiento Criminal, supra. En su proyecto, la Cámara de Representantes, propuso, entre otras cosas, delimitar con mayor especificidad el proceso de la Regla 240 de Procedimiento Criminal, supra, incluyendo aquel durante la vista preliminar. P. de la C. 3381, 16ta Asamblea, 5ta Sesión Ordinaria, 10 de mayo de 2011. Por ejemplo, en la primera radicación de este proyecto, se propuso se exigiera evidencia, además de la mera opinión de la defensa, sobre la incapacidad del imputado. Además, en el inciso (a) sobre vistas y perito, y en la (d) sobre vista preliminar, se propuso exigir que el magistrado detalle por escrito los fundamentos para determinar la incapacidad mental. También, en estos incisos se le exige a la representación legal del imputado que notifique con no menos de tres (3) días de anticipación a la vista, su intención de solicitar la paralización de los procedimientos al amparo de la regla.

La Comisión de lo Jurídico y Ética recogió expresiones positivas de la Policía de Puerto Rico, en adelante, PPR y el Departamento de Justicia, en adelante, Dpto. Justicia, con relación a las enmiendas a la Regla 240 de Procedimiento Criminal, supra. Informe de la Comisión de lo Jurídico y Ética, en adelante Informe de la Cámara, 16ta Asamblea, 5ta Sesión Ordinaria, 21 de junio de 2011.

De la Policía de Puerto Rico, se expuso lo siguiente:

[H]an presenciado cómo muchas de las personas que cometen delitos graves, particularmente asesinatos, optan por establecer como una defensa a su favor, que no están capacitados mentalmente para enfrentar el proceso criminal. Y, toda vez levantada la misma por parte de la defensa del imputado, ***suele comenzar una dilación extrema en la ventilación del caso, lo que afecta la adjudicación del***

*mismo, con el tiempo prolongado que ocurre en lo que se determina o no la procesabilidad del imputado.*

Informe de la Cámara, supra, pág. 14. (Énfasis suplido).

Por su parte, el Dpto. Justicia razonó que el simple planteamiento de no procesabilidad es insuficiente para justificar una vista al amparo de la regla en cuestión. Aun así, advirtió que:

[E]n la práctica la mera alegación de no procesabilidad por parte de la representación legal tiene el efecto de suspender inmediatamente los procedimientos judiciales en lo que se determina en una vista aparte la capacidad mental del imputado o acusado. *Lo anterior, pretende dilatar, en muchas ocasiones innecesaria e irrazonablemente, los procedimientos.* Además, desalienta la cooperación de los testigos del Estado. De conformidad con lo expresado, el Departamento respalda la enmienda propuesta en la medida que atiende la situación de requerir que la determinación inicial de no procesabilidad, *la cual da paso a la suspensión inmediata de los procedimientos y al señalamiento de una vista para determinar la capacidad mental del imputado o acusado, esté fundamentada en factores claros y objetivos.* En términos más concretos, la medida evaluada requiere a la representación legal del imputado o acusado presentar alguna prueba sobre la incapacidad mental de su representado. Resulta insuficiente su mera opinión o preocupación al respecto.

Informe de la Cámara, supra, pág. 14. (Énfasis suplido).

Por otro lado, luego de que el proyecto de la Cámara fue enviado al Senado, la Comisión de lo Jurídico Penal también recogió expresiones del Dpto. Justicia y la PPR, así también las de la Oficina de Administración de Tribunales, en adelante, OAT, y la Sociedad para la Asistencia Legal, en adelante, SAL. Informe de la Comisión de lo Jurídico Penal, en adelante, Informe del Senado, 16ta Asamblea, 5ta Sesión Ordinaria, 7 de diciembre de 2011.

El Dpto. Justicia, nuevamente, se expresa de manera positiva con respecto a las enmiendas a la Regla 240 de Procedimiento

Criminal, supra, indicando que "la enmienda aquí evaluada fomenta el reducir el número de paralizaciones innecesarias de los procedimientos criminales, lo que redunda en una mejor y más eficiente administración de la justicia en beneficio del Pueblo, ello sin vulnerar los derechos del imputado o acusado de delito al debido proceso de ley". Informe del Senado, supra, pág. 56. La PPR se expresó nuevamente a favor de las enmiendas en cuestión.

Por otra parte, la OAT entendió que las nuevas exigencias de la medida, con relación a la Regla 240 de Procedimiento Criminal, supra, en la etapa de vista preliminar "implica[n] una innecesaria multiplicación de esfuerzos". Informe del Senado, supra, pág. 57.

La SAL tampoco se expresó de manera positiva con relación a las enmiendas a la regla en cuestión, por entender que estas son "trabas irrazonables en los referidos para evaluación por razón de salud mental". Informe del Senado, supra, pág. 58. El informe recoge lo siguiente, en cuanto a las expresiones de la SAL:

> La medida parece sugerir, según discute SAL, que la Regla 240 de las de Procedimiento Criminal se utiliza para dilatar los procesos. No obstante, dicha premisa inarticulada dista de la realidad. ***Basado en la reciente jurisprudencia del Tribunal Supremo, los términos de detención preventiva (6 meses) se detienen desde el momento en que el abogado presenta la solicitud de referido a evaluación de procesabilidad. Por tanto, este procedimiento no representa un incentivo para el cliente que se encuentra sumariado, ya que no podrá recurrir al recurso de habeas corpus, si queda vencido el término de seis (6) meses de detención preventiva entretanto se atiende la petición***. Esto toda vez que se tendrá que excluir del término de detención preventiva el lapso de tiempo transcurrido desde la solicitud del referido hasta la determinación de procesabilidad.
>
> Informe del Senado, supra, pág. 60. (Énfasis suplido).

No obstante, a las oposiciones de la OAT y la SAL, el Senado aprobó el entirillado del Informe de la Cámara con su propuesta para

la Regla 240 de Procedimiento Criminal, supra, sin enmiendas a estas. El 27 de diciembre de 2011, la **Ley Núm. 281-2011** se convirtió en ley, **enmendando** la Regla 240 de Procedimiento Criminal, supra, al siguiente texto:

(a) **Vista; peritos**. En cualquier momento después de presentada la acusación o denuncia y antes de dictarse la sentencia, si el tribunal tuviere *evidencia, además de la opinión del representante legal del imputado o acusado, que estableciere mediante preponderancia de la prueba* que el acusado está mentalmente incapacitado, *o que éste no es capaz de comprender el proceso y colaborar con su defensa como consecuencia de alguna condición que afecta sus destrezas de comunicación, expondrá detalladamente por escrito los fundamentos para dicha determinación*, suspenderá los procedimientos y señalará una vista para determinar el estado mental *y/o funcional* del acusado. *Una vez se señale esta vista*, deberá el tribunal designar uno o varios peritos para que examinen al acusado y declaren sobre su estado mental *y/o funcional*. Se practicará en la vista cualquier otra prueba pertinente que ofrezcan las partes. *En estos casos, la representación legal del imputado o acusado deberá presentar al tribunal una moción informando la intención de solicitar la paralización de los procedimientos por razón de la incapacidad mental y/o funcional de su representado acompañada de evidencia pericial de tal incapacidad, dentro de un término no menor de tres (3) días antes de la fecha señalada para la vista de que se trate.*

(b) **Efectos de la determinación**. Si como resultado de la prueba el tribunal determinare que el acusado está mentalmente *y/o funcionalmente* capacitado, continuará el proceso. Si el tribunal determinare lo contrario, podrá ordenar la reclusión del acusado en una institución adecuada. *En aquellos casos en que el tribunal hallare que el imputado o acusado padece de alguna condición que no le permite comprender el proceso y colaborar con su defensa podrá ordenar, de entenderlo necesario, que éste sea ingresado en un centro de adiestramiento para el desarrollo de destrezas de vida independiente.* Si luego de así recluirse al acusado el tribunal tuviere base razonable para creer que el estado mental y/o funcional del

acusado permite la continuación del proceso, citará a una nueva vista que se llevará a cabo de acuerdo con lo provisto en el apartado (a) de esta Regla, y determinará entonces si debe continuar el proceso.

**(c)** [...]

**(d) Procedimiento en la vista preliminar**. Si el magistrado ante quien hubiere de celebrarse una vista preliminar tuviere *evidencia, además de la opinión del representante legal del imputado, que estableciere mediante preponderancia de la prueba que el imputado* está mentalmente incapacitado, *o que éste no es capaz de comprender el proceso y colaborar con su defensa como consecuencia de alguna condición que afecta sus destrezas de comunicación, expondrá detalladamente por escrito los fundamentos para dicha determinación*, suspenderá dicha vista y levantará un acta breve al efecto, de la cual dará traslado inmediato, con los demás documentos en autos, al secretario de la sala del Tribunal de Primera Instancia correspondiente, ante la cual se celebrará una vista siguiendo lo dispuesto en el inciso (a) de esta Regla. *En estos casos, la representación legal del imputado deberá presentar al tribunal una moción informando la intención de solicitar la paralización de los procedimientos por razón de la incapacidad mental y/o funcional de su representado acompañada de evidencia pericial de tal incapacidad, dentro de un término no menor de tres (3) días antes de la fecha señalada para la vista preliminar.* Si el tribunal determinare que el imputado está mentalmente *y/o funcionalmente* capacitado, devolverá el expediente al magistrado o tribunal de origen, con su resolución, y los trámites de la vista preliminar continuarán hasta su terminación. Si el tribunal determinare lo contrario, actuará de conformidad con lo provisto en el inciso (b) de esta Regla, solo que a los efectos de la vista preliminar.

(Énfasis suplido).

### D. *Obiter Dictum*

La frase *"obiter dictum"* pertenece al latín, y traducido de manera literal al español, significa "dicho de paso".[16] Según la Real Academia Española, en el contexto del Derecho, el *obiter dictum* se refiere a un "[a]rgumento empleado en una resolución **judicial *sin relevancia para el fallo"*.**[17]

El concepto *obiter dictum* es de aplicación cuando un tribunal **emite expresiones innecesarias** en un caso o una controversia que se encuentra ante su consideración, y **acerca de interrogantes jurídicas que, propiamente, no le han sido planteadas.** En el 2001, nuestro Alto Foro hizo unas declaraciones muy ilustrativas con relación a los pronunciamientos *obiter dicta*. En lo relevante al caso de epígrafe, destacamos del mismo lo siguiente:

> [E]l concepto de obiter dictum presupone, según definido, que el tribunal ponente tiene ante sí un caso real y una controversia justiciable; un obiter dictum sólo implica que, al resolver, el tribunal incurre en pronunciamientos innecesarios sobre otros asuntos que no están en controversia o que no le han sido propiamente planteados en el caso. A diferencia de una opinión consultiva, el obiter dictum emitido por un tribunal **simplemente se debe tener por no puesto**, ya que no constituye parte necesaria del fallo, sino que muchas veces son meras expresiones judiciales excesivas e innecesarias".
>
> *Ortiz v. Panel FEI*, 155 DPR 219, 252-253 (2001) (Énfasis suplido).

En el ámbito estatal, cuyos pronunciamientos tienen valor persuasivo, se ha declarado que cuando un caso no se resuelve en sus méritos, cualquier otra discusión o comentario atinente a los méritos del caso constituye *obiter dictum*. *Puryear v. State*, 810 So 2d 901, 905 (Fla, 2002). En *Clemmons v. Office of Child Support*

---

[16] REAL ACADEMIA ESPAÑOLA: *Diccionario de la lengua española*, 23.ª ed., [versión 23.7 en línea]. <https://dle.rae.es> [24 de enero de 2024].
[17] *Id.*

*Enforcement,* 345 Ark. 330, 348 *(Ark, 2001)* se produjo una reveladora discusión sobre la diferencia entre la ley del caso y el *obiter dictum.* El precitado caso expresó lo siguiente:

> Aunque bajo la doctrina del res iudicata, la decisión de un tribunal no se perturbará, por ser esta la ley del caso, lo cierto es que el tribunal no queda obligado por una conclusión establecida como *obiter dictum* – esto aun cuando haya sido expresada en términos que supongan que el foro ha llegado a una conclusión al respecto. Este tipo de expresiones no tienen fuerza de ley bajo *res iudicata,* ya que el *obiter dictum* es un mero comentario de la corte, y no una decisión de este.

(Traducción nuestra).

Las expresiones de un foro judicial que, conforme al cuadro jurídico establecido, constituyen *obiter dictum,* representan un atavío del razonamiento requerido para la resolución de un caso. Este tipo de expresiones no forman parte de la *ratio decidendi,* por lo que no son vinculantes.

**III.**

El Procurador nos plantea que el TPI-Aguadilla erró excarcelando a Vidal Rosa, al concederle un recurso de habeas corpus. Nos argumenta que el Foro Primario se equivocó al no descontar del término de detención preventiva del recurrido, el tiempo desde que se encontró "base razonable" para los procedimientos bajo la Regla 240 de Procedimiento Criminal, supra, hasta que fue encontrado procesable. Este Tribunal entiende que al peticionario *le asiste razón.*

En su introducción, el Procurador expresa que la controversia planteada, provocada por las expresiones del Tribunal Supremo de Puerto Rico en caso de *Pueblo v. Pagán Medina II,* supra, "ha provocado confusión y opiniones encontradas en la comunidad jurídica, resultando así en una divergencia de criterios". Nos señala, además, que esta división jurídica se compone de quienes, por una

parte, entienden que las expresiones que atienden este asunto en el caso precitado constituyen un dictum. Por otro lado, están aquellos que consideran estas expresiones vinculantes. Por ello, el peticionario nos ha solicitado que adoptemos una posición de manera fundamentada, en este "vacío jurídico que necesita análisis, desarrollo y discusión".

Habiendo estudiado y analizado la controversia que se nos plantea con la solemnidad que amerita, nos vemos obligados a resolver a favor del peticionario, justipreciando que las expresiones de nuestra Alta Curia en el caso de *Pueblo v. Pagán Medina II*, supra, con relación a la suspensión de términos cuando el imputado es encontrado procesable, ***son un dictum***. Además, entendemos que la interpretación de estas por el Foro Primario está errada en derecho.

En la vista del 3 de octubre de 2023, mediante una solicitud de habeas corpus, la defensa de Vidal Rosa planteó que este llevaba más de 180 días encarcelado sin que se le celebrara juicio, y debía ser excarcelado inmediatamente. Argumentó que los términos de detención preventiva nunca habían sido suspendidos, dado a que en ambos procedimientos de la Regla 240 de Procedimiento Criminal, supra, el recurrido había sido encontrado procesable. Veamos.

| Periodos de encarcelamiento | | Total de días |
|---|---|---|
| **24 de marzo de 2023** (Causa probable para arresto) | **3 de mayo de 2023** ("Base razonable" procesabilidad) | **40 días** (Periodo fuera de la R. 240) |
| **3 de mayo de 2023** ("Base razonable" procesabilidad) | **12 de junio de 2023** (Encontrado procesable) | ***40 días*** *(Periodo dentro de la R. 240)* |
| **12 de junio de 2023** (Encontrado procesable) | **5 de septiembre de 2023** ("Base razonable" procesabilidad) | **85 días** (Periodo fuera de la R. 240) |
| **5 de septiembre de 2023** ("Base razonable" procesabilidad) | **2 de octubre de 2023** (Encontrado procesable) | **27 días** *(Periodo dentro de la R. 240)* |
| **2 de octubre de 2023** (Encontrado procesable) | **4 de octubre de 2023** (Excarcelado por habeas corpus) | **2 días** (Periodo fuera de la R. 240) |

La cantidad total de los días que Vidal Rosa estuvo encarcelado *suman 194 días*. La defensa arguyó que de ese cómputo no se podían descontar *los 67 días* que el recurrido estuvo bajo los procesos de Regla 240 de Procedimiento Criminal, supra, ya que en ambos, el TPI-Aguadilla lo encontró procesable. Para esto, la representación legal de Vidal Rosa arguyó que en *Pueblo v. Pagán Medina II,* supra, nuestro Alto Foro había creado un precedente para estos casos. Por tanto, planteó que, en miras de la procesabilidad de su cliente, los términos de detención preventiva nunca se interrumpieron, sobrepasando así estos el máximo de 180 días.

El Foro Primario acogió este argumentó y ordenó la excarcelación del recurrido. Sin embargo, esta Curia entiende que el TPI-Aguadilla debió denegar el recurso de habeas corpus. A los 194 días en reclusión, se le debieron descontar los 67 días bajo los procedimientos procesabilidad, para un total de 127 días. ***Este Tribunal concluye que para la fecha de su excarcelación el 4 de octubre de 2023, al recurrido aún le quedaban 53 días de detención preventiva.***

Como vimos, la historia y el lenguaje legislativo de la Regla 240 de Procedimiento Criminal, supra, ha sido clara en su intención de suspender los términos de detención preventiva cuando un imputado se encuentra bajo sus procedimientos. *Pueblo v. Méndez Pérez,* supra, pág. 788. El texto mismo de la regla, antes y después de la Ley Núm. 281-2011, supra, utiliza palabras derivadas de "suspender", "continuar" y "paralizar", al hablar de los efectos de los referidos de procesabilidad.

Más allá del argumento textual que ofrecemos, lo cierto es que el desarrollo de nuestra jurisprudencia se ha afianzado en esta interpretación. Aun con la fortaleza constitucional con la que se defienden los términos de detención preventiva, desde la década de

los cincuenta, nuestro Alto Foro ha reconocido la existencia de escenarios excepcionales que suspenden estos términos.

Hace más de veinte (20) años que nuestro Tribunal Supremo reconoció que la Regla 240 de Procedimiento Criminal, supra, pausan los términos de detención preventiva. Durante estos años, ha razonado que esto es lo justo para el individuo que es insertado a un procedimiento criminal, y no está mentalmente capacitado para enfrentarlo. Además, ha reconocido, y en esto anclamos nuestro razonamiento para lo que aquí resolvemos, que durante los procedimientos de procesabilidad, *el Ministerio Público se encuentra constitucionalmente vedado e incapacitado de continuar la marcha penal de su caso. Pueblo v. Méndez Pérez,* supra, págs. 788-789.

No logramos ubicar la lógica de retrotraer los términos de detención preventiva al momento de encontrar "base razonable", cuando el imputado es hallado procesable, con el fin de pretender que nunca descorrieron. *¿**Puede el Ministerio Público rebobinar los procesos criminales a ese momento también, para así recuperar el tiempo en el que no tenía autorización en derecho para hacer su trabajo?** **Contestamos en la negativa.***

Hacemos notar que no utilizamos la frase "el tiempo que perdió para hacer su trabajo", ya que, durante el mismo, el Ministerio Público permanece inmovilizado, no porque actúe con irresponsabilidad o descuido, sino porque el procesamiento criminal se encuentra paralizado. *Pueblo v. Méndez Pérez,* supra, pág. 789. Es decir, en estricto derecho, el Ministerio Público no tiene opción alguna.

Por otro lado, aun con las diversas interpretaciones que abarrotan la delicada y complicada mezcla jurídica-psicológica, una cosa resulta inobjetable: la condición mental de un individuo puede variar durante los largos y duros procesos criminales. Argumentamos, además, que si para los procesos de

inimputabilidad, los términos no se retrotraen al momento en el que se levantó la defensa, una vez el individuo es encontrado imputable, ¿por qué hacerlo para los casos de procesabilidad? Aunque estas dos defensas se levantan para propósitos distintos en el proceso criminal, lo cierto es que evalúan lo mismo – la capacidad mental del imputado. Y en ambas se paralizan los procesos.

En el proceso adversativo de un caso penal, lo que para la parte imputada constituye un derecho, no puede resultar en el atropello del Ministerio Público que – en representación del Pueblo de Puerto Rico –busca hacer valer la ley y el orden público.

La parte recurrida, quien está representada por la SAL, nos plantea en su recurso que conforme a *Pueblo v. Pagán Medina II*, supra, el habeas corpus procedía, ya que los términos de detención preventiva nunca se suspendieron. No obstante, en el estudio y en la búsqueda del espíritu detrás de la Regla 240 de Procedimiento Criminal, supra, nos topamos con una postura, también de la SAL, presentada posterior al aludido caso, que distan significativamente de lo que ahora le plantea a este Tribunal.

Cuando nuestra legislatura decidió formalizar los procesos al amparo de la regla que aquí nos ocupa, SAL compareció para oponerse. En aquel momento, señaló que los motivos de esta enmienda parecían sugerir que la regla era utilizada como mecanismo de dilación procesal. Para rebatir la misma, reconoció que los términos de detención preventiva se suspendían en los procedimientos de procesabilidad, y por ello, la Regla 240 de Procedimiento Criminal, supra, "no representa un incentivo para el cliente que se encuentra sumariado, ya que no podrá recurrir al recurso de habeas corpus, si queda vencido el término de seis (6) meses de detención preventiva entretanto se atiende la petición". Informe del Senado, supra, pág. 60.

Los planteamientos levantados por la SAL quedan probados con el ejemplo que produce la controversia ante nos. Las alegaciones de dilaciones que inspiraron el fortalecimiento y la estructuración de la Regla 240 de Procedimiento Criminal, supra, quedan redimidos ante los ojos de esta Curia. Esto último entendemos, precisamente, porque a diferencia de sus postulados para las enmiendas de la Ley Núm. 281-2011, supra, la SAL, en la defensa de su cliente aquí recurrido, logró la excarcelación de este, por medio de sus dos solicitudes de procesabilidad. La misma fue posible, por conducto de un recurso de habeas corpus, al amparo de un reclamo por términos de detención preventiva.

Aún si hubiésemos quedado convencidos por su razonamiento, la parte recurrida está amparada en unas expresiones que no nos vinculan. Pocos ejemplos resultan más claros que este – el pequeño párrafo que nuestro Alto Foro añadió al final de *Pueblo v. Pagán Medina II*, supra, constituye un *dictum*. En el precitado caso, la Oficina del Procurador General le solicito a nuestro Alto Foro que reconsiderara "una opinión del Tribunal Supremo [...] en la que se resolvió que la paralización del proceso para celebrar un juicio de acuerdo con la Regla 240 de Procedimiento Criminal, no excluye el término de detención preventiva el periodo en el cual el Ministerio Público está impedido de procesar al individuo". *Pueblo v. Pagán Medina II*, supra, pág. 232.

La pregunta sobre, qué ocurre cuando se determina 'base razonable' para paralizar los procedimientos, y la prueba pericial que se presente durante la vista de la Regla 240 demuestra que el imputado está procesable, no le fue planteada a nuestro Alto Foro. Ni siquiera formaba parte de los hechos del caso, ya que el imputado en el mismo, fue originalmente encontrado no procesable. Sin embargo, el Tribunal Supremo de Puerto Rico la atendió. En su

*dictum,* determinó que, en estos casos, el término aludido no se entendía interrumpido.

Luego de evaluar todo lo aquí esbozado, este Tribunal asume una postura frente al vacío jurídico apuntalado por el Procurador General, y concluye que las expresiones de *Pueblo v. Pagán Medina II,* supra, son producto de un *obiter dictum.* Además, entendemos que concluir lo contrario sería entregarle una espada desenvainada a los imputados de delito para dilatar los procesos, y abusar de los importantes recursos provistos por la Regla 240 de Procedimiento Criminal, supra, y de *habeas corpus.*

## IV.

Por los fundamentos aquí esbozados, *expedimos el auto solicitado, revocamos la "Sentencia" recurrida, ordenamos la encarcelación de Juan Carlos Vidal Rosa y devolvemos el caso al TPI-Aguadilla para la continuación de los procedimientos, conforme a lo aquí resuelto.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana disiente mediante voto escrito.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br><br>Peticionario<br><br>v.<br><br>**JUAN CARLOS VIDAL ROSA**<br><br>Recurrido | KLCE202301281 | **CERTIORARI**<br>Procedente del Tribunal de Primera Instancia, Sala de **Aguadilla**<br><br>Caso núm.:<br>A MI2023-0091<br>A BD2023G0075<br>A LA2023G0106<br>(502)<br><br>Sobre: **Habeas Corpus** |

Panel integrado por su presidenta la juez Domínguez Irizarry, la jueza Grana Martínez y el juez Pérez Ocasio.



### VOTO DISIDENTE DE LA JUEZA GRANA MARTÍNEZ

Para que sea eficiente la garantía del derecho a un juicio justo e imparcial se requiere que el acusado goce de un estado específico de capacidad mental como criterio para medir la capacidad procesal.[1] De ahí que ninguna persona será juzgada, convicta o sentenciada por un delito mientras esté mentalmente incapacitada....[2]

La capacidad procesal se presume y se evalúa al ser invocada independientemente que, al momento de los hechos imputados, el acusado gozaba de capacidad sustantiva.[3] Se ostenta capacidad procesal, cuando el acusado comprende la naturaleza de los procesos que se llevan en su contra y participa en los mismos con plena conciencia de su significado.[4] Cualquier enfermedad no es suficiente para privar de capacidad, sino aquella que no le permite al acusado proyectarse en tiempo, espacio y lugar, enajenándolo

---

[1] O. E. Resumil de Sanfilippo, *Práctica Jurídica de Puerto Rico, Derecho Procesal Penal*, Orford, New Hampshire, Quity Publishing Company, Tomo I, sec. 5.18, pág.101.

[2] 34 LPRA Ap. II, R. 239.

[3] Resumil de Sanfilippo, op. cit, sec. 5.18, pág.101.

[4] Incompetent persons "are not really present at trial; they may not be able properly to play the role of an accused person, to recall relevant events, to produce evidence and witnesses, to testify effectively on their own behalf, to help confront hostile witnesses, and to project to the trier of facts a sense of their innocense." *Medina v. California*, 505 US 437, 457-458 (1992).

completamente de la conciencia de sí y su relación con el ambiente circundante, de modo que le impida operar una defensa conforme a sus intereses, defenderse adecuadamente o, simplemente no poder colaborar con su defensa.[5] Requiere que el acusado entienda la naturaleza de los procedimientos, de forma que pueda ayudar a su abogado y a sí mismo, a su mejor defensa. La comprensión de la naturaleza y propósito de los procedimientos por parte del imputado va más allá de un mero conocimiento del proceso criminal en su contra. Este entendimiento incluye, además, si el imputado o acusado entiende racionalmente: (1) los cargos en su contra; (2) el rol del juez y del fiscal; (3) recordar y relatar hechos relacionados con sus acciones; (4) seguir instrucciones; (5) identificar testigos, ayudar a localizarlos y a interrogarlos; (6) tomar decisiones, luego de una completa explicación de las alternativas; (7) testificar eficientemente y, a su vez, ser contrainterrogado. *Pueblo v. Santiago Torres*, 154 DPR 291, 307 (2011)[6].



Por otro lado, en el 2011,[7] como bien reconoce la Sentencia de la opinión mayoritaria, ciertas Reglas de Procedimiento Criminal se enmendaron para, entre otras, requerir que se presentase una moción, dentro de un término no menor de tres (3) días antes de la vista señalada, en la que se notificara al tribunal la intención de

---

[5] Resumil de Sanfilippo, op. cit, sec. 5.18, pág.102.

[6] Silten & Tullis, *Mental Compentency inCriminal Proceedings*, 28 Hasting L. J. 1053, 1061 (1977).

[7] Se enmendó la regla nuevamente mediante la Ley 174-2018 para, entre otras cosas, atender los problemas de las personas sordas que habían sufrido desahucios, la remoción de sus hijos menores de edad y la pérdida de su libertad sin la intervención oportuna de un intérprete, en detrimento de sus derechos constitucionales y estatutarios, como el que aquí se discute. En dicha ocasión se atendía la problemática que aquejaba la comunidad sorda en ciertas etapas del proceso penal. Por ejemplo, el ejercicio de un derecho tan elemental como el de comunicarse efectivamente con su abogado, se le hacía imposible a las personas sordas que utilizaban el lenguaje de señas porque no existía un procedimiento establecido que permitiese retirarles las esposas y simultáneamente garantizar la seguridad de los presentes. Tampoco existían medidas efectivas para la preservación de un récord de equivalencia dinámica que resultase manejable para las personas sordas. Por la naturaleza gesticular y visual del lenguaje de señas, un récord meramente escrito o auditivo de la interacción en sala, no conservaba la integridad de los procedimientos y resulta deficiente para esta comunidad. Consecuentemente, las personas sordas se enfrentaban a un sistema judicial que no había sido preparado con ellas en mente, en el que, en ocasiones, resultaba obstruido el ejercicio de sus derechos constitucionales. Véase, Exposición de Motivos de la Ley 174-2018.

solicitar la paralización de los procedimientos por razón de incapacidad mental del imputado o acusado; que en la vista la representación legal presentara alguna prueba de la incapacidad mental del imputado o acusado, además de su propio testimonio; que el magistrado o juez determinara, mediante preponderancia de la prueba, que el imputado o acusado de delito se encontraba mentalmente incapacitado y que expusiese detalladamente por escrito, los fundamentos que motivaban su determinación de suspender los procedimientos y señalar una vista para determinar la capacidad mental de éste.[8] Después de la enmienda, la regla en la actualidad lee:

> Regla 240. Capacidad mental y/o funcional del acusado; procedimiento para determinarla
>
> (a) Vista; peritos. En cualquier momento después de presentada la acusación o denuncia y antes de dictarse la sentencia, si el tribunal tuviere evidencia, **además de la opinión del representante legal del imputado o acusado**, que estableciere mediante **preponderancia de la prueba**[9] que el acusado está mentalmente incapacitado, o que éste no es capaz de comprender el proceso y colaborar con su defensa como consecuencia de alguna condición que afecta sus destrezas de comunicación, expondrá detalladamente por escrito los fundamentos para dicha determinación, suspenderá los procedimientos y señalará una vista para determinar el estado mental y/o funcional del acusado.
>
> Una vez se señale esta vista, deberá el tribunal designar uno o varios peritos para que examinen al acusado y declaren sobre su estado mental y/o funcional. Se practicará en la vista cualquier otra prueba pertinente que ofrezcan las partes. **En estos casos, la representación legal del imputado o acusado deberá presentar al tribunal una moción informando la intención de solicitar la paralización de los procedimientos por razón de la incapacidad mental y/o funcional de su representado acompañada de**



---

[8] Véase, Exposición de Motivos Ley 281-2011.

[9] En muy raras ocasiones es posible determinar un hecho con certeza o exactitud matemática. Exigir ese tipo de prueba a un litigante equivaldría prácticamente a requerirle un imposible. Por esto, la ley y la jurisprudencia se limitan a requerir que los casos se prueben por preponderancia de la prueba, que es tanto como establecer como hechos probados aquéllos que con mayores probabilidades ocurrieron. *Zambrana v. Hospital Santo Asilo de Damas*, 109 DPR 517, 521 (1980). Preponderancia de la prueba-mayor peso de la prueba, no en cuanto a cantidad (número de testigos o de documentos presentados), sino en cuanto a calidad (credibilidad y mayor peso de importantes hechos probados). I. Rivera García, *Diccionario de Términos Jurídicos*, 2da edición rev., Orford, New Hampshire, Equity Publishing, pág. 215.

**evidencia pericial de tal incapacidad, dentro de un término no menor de tres (3) días antes de la fecha señalada para la vista de que se trate.**

(b) Efectos de la determinación. Si como resultado de la prueba el tribunal determinare que el acusado está mentalmente y/o funcionalmente capacitado, continuará el proceso.

Si el tribunal determinare lo contrario, podrá ordenar la reclusión del acusado en una institución adecuada. En aquellos casos en que el tribunal hallare que el imputado o acusado padece de alguna condición que no le permite comprender el proceso y colaborar con su defensa podrá ordenar, de entenderlo necesario, que éste sea ingresado en un centro de adiestramiento para el desarrollo de destrezas de vida independiente. Si luego de así recluirse al acusado el tribunal tuviere base razonable para creer que el estado mental y/o funcional del acusado permite la continuación del proceso, citará a una nueva vista que se llevará a cabo de acuerdo con lo provisto en el apartado (a) de esta Regla, y determinará entonces si debe continuar el proceso.

[...]



(c)   Procedimiento en la vista preliminar. Si el magistrado ante quien hubiere de celebrarse una vista preliminar tuviere evidencia, **además de la opinión del representante legal del imputado, que estableciere mediante preponderancia de la prueba que el imputado está mentalmente incapacitado, o que éste no es capaz de comprender el proceso y colaborar con su defensa como consecuencia de alguna condición que afecta sus destrezas de comunicación, expondrá detalladamente por escrito los fundamentos para dicha determinación, suspenderá dicha vista y levantará un acta breve** al efecto, de la cual dará traslado inmediato, con los demás documentos en autos, al secretario de la sala del Tribunal de Primera Instancia correspondiente, ante la cual se celebrará una vista siguiendo lo dispuesto en el inciso (a) de esta Regla. **En estos casos, la representación legal del imputado deberá presentar al tribunal una moción informando la intención de solicitar la paralización de los procedimientos por razón de la incapacidad mental y/o funcional de su representado acompañada de evidencia pericial de tal incapacidad, dentro de un término no menor de tres (3) días antes de la fecha señalada para la vista preliminar.** Si el tribunal determinare que el imputado está mentalmente y/o funcionalmente capacitado, devolverá el expediente al magistrado o tribunal de origen, con su resolución, y los trámites de la vista preliminar continuarán hasta su terminación. Si el tribunal determinare lo contrario, actuará de conformidad con lo provisto en el inciso (b) de esta Regla, solo que a los efectos de la vista preliminar.

34 LPRA Ap. II. (Énfasis nuestro).

En relación con la enmienda a la regla, surge de los informes considerados por las comisiones que estudiaron la propuesta de enmienda, consideraciones pertinentes a la controversia que hoy atendemos. En el Informe Positivo de la Cámara sobre la Ley 281-2011 se puntualizó que la Policía de Puerto Rico señaló que, aun cuando se solidarizaban con el propósito de la enmienda, habían sido testigos del abuso de la regla. Particularizaron haber presenciado como "muchas de las personas que cometen delitos graves, particularmente asesinatos, optan por establecer como una defensa a su favor, que no están capacitados mentalmente para enfrentar el proceso criminal. Y, toda vez levantada la misma por parte de la defensa del imputado, suele comenzar una dilación extrema en la ventilación del caso, lo que afecta la adjudicación del mismo, con el tiempo prolongado que ocurre en lo que se determina o no la procesabilidad del imputado. Por tal razón, la Policía señalaba con agrado el que la enmienda contemplara que el Tribunal no descansara únicamente en las alegaciones de la defensa y sus peritos para determinar procesabilidad del acusado, sino que se viera precisado, luego de escuchada las partes, fundamentar si la persona es procesable o no, es decir si la condición mental de ésta permitía que se continuase con el procedimiento criminal en su contra. De igual manera aceptaban con agrado la enmienda que obligaría a la defensa a presentar una moción para paralizar la Vista que se trate, por la alegada no procesabilidad de su cliente, con 3  días de antelación de la celebración de la Vista. Señalaban acertadamente que sería un mecanismo acertado para evitar las suspensiones de los procedimientos de manera imprevista, por la alegada no procesabilidad del acusado.

Por su parte, el Departamento de Justicia y sobre el mismo tema, concordaba con lo expresado por la Policía, a los efectos de "que, para justificar la necesidad de una vista para determinar la

competencia o capacidad mental del acusado, debe haber alguna evidencia que cree duda sobre el asunto. El mero planteamiento del mismo resulta insuficiente." Igual que la Policía señalaron que, en la práctica, la alegación de falta de capacidad del acusado muchas veces pretendía dilatar, en muchas ocasiones, innecesaria e irrazonablemente, los procedimientos. Además, desalentaba la cooperación de los testigos del Estado. Aplaudían la intención de establecer que la determinación inicial de no procesabilidad esté fundamentada en factores claros y objetivos. Especialmente pertinente al caso que hoy atendemos, expresaba la ponencia del Departamento; "en términos más concretos, la medida evaluada requiere a la representación legal del imputado o acusado presentar alguna prueba sobre la incapacidad mental de su representado. Resulta insuficiente su mera opinión o preocupación al respecto. Además, como fundamento para paralizar los procedimientos y señalar una vista para determinar la capacidad mental de su representado resulta insuficiente su mera opinión o preocupación al respecto. Así también, como fundamento para paralizar los procedimientos y señalar una vista para determinar la capacidad mental, la medida requiere que el juzgador determine mediante preponderancia de la prueba que, el imputado o acusado de delito, se encuentre mentalmente incapacitado. También se requiere que el magistrado o juez exponga detalladamente por escrito los fundamentos que motivan su determinación." Por último, concluían que requerir que se presente al tribunal una moción informando la intención de solicitar la paralización de los procedimientos, por razón de la incapacidad mental del imputado o acusado, dentro de un término no menor de tres (3) días, antes de la fecha señalada para la vista de la cual se trate, le concedía al Ministerio Público una oportunidad real de prepararse para rebatir cualquier alegación en torno a la incapacidad del imputado o acusado.



Por su parte, la propuesta de enmiendas a la regla en el Senado contó con las ponencias, entre ellas, la Sociedad para la Asistencia Legal (SAL). Esta manifestó su inconformidad con lo que catalogó como trabas irrazonables en los referidos para evaluación por razón de salud mental. Reconocieron, en su ponencia, que la medida imponía sobre el abogado de defensa y el imputado, el peso de presentar evidencia independiente que establezca por preponderancia de prueba que el acusado estaba mentalmente incapacitado, además de tener que exponer por escrito los fundamentos para dicha determinación tres (3) días antes de la vista. Puntualizó que la regla hasta entonces, el examen de base razonable había sido interpretado por el Tribunal Supremo y la Corte Suprema de los Estados Unidos, a los fines de establecer que el debido proceso de ley requería que el magistrado tomara su determinación apoyándose en indicadores, tales como los comportamientos erráticos durante el proceso, que al momento de alegarse su procesabilidad se trajese historial de citas, indicios de que el imputado se encuentra bajo los efectos de sustancias controladas o en "retirada", además, de un coeficiente intelectual mermado, entre otras. Identificaron su preocupación sobre conflictos éticos de sus abogados al tener el peso de presentar prueba que sustente elementos, en su mayoría, de naturaleza altamente subjetiva y perceptible tan sólo entre las partes, cuando tenía contacto con los acusados, muy poco tiempo a la vista preliminar y en muchas ocasiones, sus clientes no habían recibido ningún tipo de tratamiento de salud mental y eran diagnosticados por primera vez dentro de los procesos de la Regla 240.



Para SAL su obligación debía limitarse al acto de referir a evaluación a los clientes cuando sospechara que pudiesen presentar un cuadro de no procesabilidad. En cuanto al argumento del Departamento de Justicia de que la mera alegación de

inimputabilidad se utilizaba para detener los procesos irrazonablemente manifestaron lo siguiente, lo cual por su pertinencia citamos: "[b]asado en la reciente jurisprudencia del Tribunal Supremo, los términos de detención preventiva (6 meses) se detienen desde el momento en que el abogado presenta la solicitud de referido a evaluación de procesabilidad. Por tanto, este procedimiento **no representa un incentivo para el cliente que se encuentra sumariado, ya que no podrá recurrir al recurso de habeas corpus, si queda vencido el término de seis (6) meses de detención preventiva entretanto se atiende la petición. Esto toda vez que se tendrá que excluir del término de detención preventiva el lapso de tiempo transcurrido desde la solicitud del referido hasta la determinación de procesabilidad.**" (Énfasis nuestro).



El legislador aprobó la enmienda sin incorporar cambios, aun conociendo, las objeciones a la medida; específicamente que se le impusiera el peso de la prueba al acusado; se obligara a los jueces a efectuar las determinaciones sobre las cuales descansara su decisión de referir para determinación de procesabilidad, y de la advertencia de SAL de que el término de detención preventiva se paralizaba ante la alegación de falta de capacidad y su consabido referido. Los informes de análisis de la medida nos ayudan a comprender la discusión generada y el alcance de la medida aprobada.

De manera que ha de quedar claro, que durante el procesamiento criminal se podrá traer a la atención del juzgador la falta de procesabilidad del acusado. Esta regla se sostiene en la máxima de que el procesamiento criminal de un acusado incompetente viola el debido proceso.[10] No obstante, la

---

[10] *Cooper v. Oklahoma*, 517 US 348 (1996).

determinación de competencia no podrá sostenerse únicamente en la opinión del representante legal del acusado. Su defensa tendrá el peso de la prueba para establecer, mediante preponderancia de la prueba, que el acusado está mentalmente incapacitado, o que éste no es capaz de comprender el proceso y colaborar con su defensa, como consecuencia de alguna condición que afecta sus destrezas de comunicación. Además, el juzgador deberá exponer detalladamente, por escrito, los fundamentos de su decisión, suspenderá los procedimientos y señalará una vista para determinar el estado mental y/o funcional del acusado. Entre los indicadores que pudieran sugerir que un imputado no es procesable se encuentran el que demuestre un comportamiento errático durante el proceso; que al momento de alegarse que no es procesable se traiga ante la consideración del juez evidencia de un historial de comportamiento severamente irracional; que se presente evidencia de que el imputado se encuentra bajo la influencia de drogas o sufriendo del "síndrome de retirada". Además, las evaluaciones siquiátricas, tarjetas de citas y hospitalizaciones en el Hospital de Siquiatría, y resultados de exámenes que demuestran un cociente intelectual mermado, podrán brindar la "base razonable" necesaria para creer que el imputado está mentalmente incapacitado y para proceder a la vista de procesabilidad. *Pueblo v. Pagán Medina,* 178 DPR 228, 240 (2010); *Pueblo v. Santiago Torres,* supra, pág. 303.

Ahora bien, señala Chiesa[11] que el Tribunal Supremo de Puerto Rico, en *Sánchez v. González,* 78 DPR 849 (1955)[12], tuvo la oportunidad de evaluar si las solicitudes de posposición de juicio hechas por un acusado, en dos ocasiones antes de transcurrir el término de seis (6) meses y concedidas por el juzgador, equivalían a

---

[11] E. L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* 1ra ed., Colombia, Editorial Forum (1992), Volumen II, pág. 463.
[12] Aunque es una Sentencia y no se considera precedente, el Tribunal Supremo de Puerto Rico en varias ocasiones cita la misma en el análisis de este tema. Véase, *Pueblo v. Díaz Alicea,* 204 DPR 472 (2020); *Pueblo v. Aponte Ruperto,* supra.



una renuncia al término de detención preventiva. El foro judicial respondió negativamente. Señaló que hay una renuncia implícita en la esfera de juicio rápido, pero no en cuanto a la detención preventiva. Concluyó el foro que, el derecho invocado, a un término máximo de detención preventiva de seis meses, ni es renunciable, ni tampoco absoluto. Razonó que la posposición de un juicio, a solicitud de un acusado, por causa fundada, interrumpe el término estatutario de 120 días dentro del cual debe celebrarse el juicio y excluye las consecuencias jurídicas del sobreseimiento del proceso. El derecho de un acusado a una posposición—bien se encuentre en libertad bajo fianza o bajo custodia—no puede medirse en términos de renuncia o de sacrificio del derecho a su libertad personal, luego de seis meses de detención, ni éste puede medirse en términos de renuncia o de sacrificio del derecho a la posposición, si ésta procede. Afirmó que la posposición requiere el ejercicio de una discreción judicial sobria, para proteger al acusado en el disfrute de su derecho a un juicio justo, y en sus oportunidades de defensa. Se concede por consideraciones que no afectan la situación de libertad o custodia del acusado, y al concederse, que surte efectos de renuncia, tan sólo en la esfera del juicio rápido, no puede derrotar su derecho a la libertad provisional sin fianza después de seis meses, ni puede condicionarse a que éste renuncie a tal derecho. Ahora bien, quedó claro, que dicho derecho es irrenunciable, y que tampoco es absoluto. El Tribunal Supremo claramente expresó que ni la ilegalidad[13] ni el fraude[14] de un acusado llevando a cabo actos orientados a que el Estado sea incapaz de someterle a juicio serían aceptables.

---

[13] Se define como Acción ilegal. Los sinónimos son: infracción, trasgresión, delito, falta, quebrantamiento, chanchullo, irregularidad. https://dle.rae.es/ilegalidad?m=form (última visita 8 de febrero de 2024).
[14] En lo penal se considera un acto fraudulento aquel acto cometido mediante ardid, simulación, trama, treta o cualquier forma de engaño. I. Rivera García, op. cit., pág. 108.

Nuevamente mediante Sentencia,[15] la Opinión de conformidad emitida por la Jueza Presidenta Oronoz Rodríguez en *Pueblo v. Aponte Ruperto*, 199 DPR 538 (2018), reitera las expresiones del entonces Juez Asociado Negrón Fernández, el Juez Presidente Snyder y el Juez Asociado Sifre Dávila del Tribunal Supremo a los efectos de que, cuando el acusado interfiera indebidamente con su enjuiciamiento no podrá oponerle al Estado su derecho a no ser detenido preventivamente por más de seis meses.[16] Está claro que, mientras se evalúa la condición mental del imputado, "el Ministerio Público se encuentra, a su vez, legal y constitucionalmente vedado —'con las manos atadas'— de proseguir con el procesamiento criminal que tiene el deber de ejecutar". *Pueblo v. Pagán Medina*, supra, pág. 243.[17] Lo que constituye la tercera excepción establecida por la jurisprudencia en cuanto al término de detención preventiva. A manera de repaso, este se interrumpe por ilegalidad, fraude o desde que se encuentra base razonable por el magistrado para creer que el acusado no es procesable. Razona que tal proceder no se fundamenta en justa causa, sino en que el debido proceso de ley le impide como salvaguarda constitucional al Estado procesar a un acusado, mientras se determina su procesabilidad. Así declara expresamente que; "[e]s justamente esta prohibición



---

[15] No siempre se resuelven los casos mediante opinión. Por ejemplo, el Tribunal Supremo de Puerto Rico a veces resuelve asuntos ante su consideración mediante sentencia. Se trata de decisiones generalmente no publicadas, aunque a veces se publican cuando algún juez concurre o cuanto disiente mediante opinión. Usualmente son escritos muy breves, que no analizan con profundidad los problemas jurídicos que el caso plantea porque realmente el asunto es de poca importancia jurídica, o requiere una solución tan trillada en la jurisprudencia que no amerita publicación. Por no presentar un análisis completo y profundo, y por no estar publicadas y accesibles a la profesión en general, es impropio invocarlas como precedente en los escritos jurídicos, o siquiera citarlas. Ni siquiera cuando se les publica porque provocan la redacción de alguna opinión concurrente o disidente, tienen las sentencias valor precedencial. C. I. Gorrín Peralta, *Fuentes y Procesos de Investigación Jurídica*, Orford, New Hampshire, Equity Publishing Company, 1991, pág. 481.

[16] Opinión de Conformidad emitida por la Jueza Presidenta Oronoz Rodríguez en *Pueblo v. Aponte Ruperto*, supra, pág. 547. (Sentencia)

[17] If a defendant is incompetent, due process considerations require suspension of the criminal trial until such time, if any, that the defendant regains the capacity to participate in his defense and understand the proceedings against him. *Medina v. California*, supra, pág. 448.

constitucional la que posibilita que se interprete que el término que dure el trámite de procesabilidad quede excluido del término de detención preventiva."

Luego de traer a la atención el Derecho pertinente a la controversia advierto que el objetivo principal de una moción de reconsideración es dar una oportunidad a la corte que dictó la sentencia o resolución para enmendar o corregir los errores en que hubiese incurrido al dictarla. *Lagares v. E.L.A.*, 144 DPR 601, 609 (1997). No creo que el foro recurrido haya cometido error alguno, me explico. El término de seis meses de detención preventiva transcurrió. El juzgador que apreció la prueba y observó de primera mano el comportamiento del acusado ejerció su discreción, luego de evaluar en dos ocasiones al acusado. El acusado, en todo momento, estuvo bajo el control y la custodia del Estado; no surge que en ningún momento se haya planteado por el Ministerio Público que la alegación de la defensa sobre la procesabilidad estuviese motivada por alguna ilegalidad, se hiciera para dilatar los procesos o se incurriera en algún acto fraudulento o treta para dilatar el proceso. Es más, el día de la vista de *Habeas Corpus*, según consta en la Sentencia del TPI, el Ministerio Público expresó; "que no existía impedimento legal que se conociera para que se concediera el Habeas Corpus." Sostiene la Sentencia que, en la reconsideración, el Ministerio Público alegó que omitió plantear la improcedencia del Habeas Corpus conforme *Pueblo v. Pagán Medina II*. A mi entender, se reconsidera lo que previamente se consideró, no una teoría, una nueva estrategia, no algo a lo que anteriormente se consintió. Considero que permitir esta intervención atenta contra la certeza de los dictámenes y estabilidad del sistema. No hallo un fundamento legal razonable para revocar la determinación de un juzgador que ha tomado las providencias a las cuales viene obligado ante una alegación de falta de capacidad para ser procesado. En su quehacer



judicial, ha consultado las partes sobre su parecer acerca de la excarcelación del acusado, ha recibido prueba mediante testimonio y ha procedido a ordenar la misma. Esto con el consentimiento del Ministerio Público.

Por último, el resultado al cual llega la opinión mayoritaria permite que el Estado descuente del término de detención preventiva todo lo que al Estado le tome desde que un juzgador entiende que existe base razonable para creer que el acusado no se encuentra procesable hasta que se determine que sí lo está. Sin término de tiempo, ni siquiera directivo. Y bajo el absoluto control procesal del Estado. La persona que, por su condición de pobreza, no pueda prestar la fianza, y a quien no olvidemos, se le presume inocente hasta que se le pruebe lo contrario, tendrá que estar encarcelada hasta que se determine que está procesable. Mientras que aquel que tiene recursos y pudo prestar fianza, no se verá de manera alguna afectado por la dilación del Estado. No creo que una protección constitucional de tal envergadura, que se originó para proteger al ciudadano de los abusos del Estado, deba ser menguada por consideraciones ajenas al bienestar de aquellos a quienes concibió proteger en su origen, para paliar el sistema de procesamiento criminal. El Estado siempre tendrá los criterios de fraude o ilegalidad para considerar, en cada caso particular, si un acusado mediante treta, chanchullo o engaño intentó burlar el sistema.

Por las razones antes expresadas, hubiese denegado el recurso.

En San Juan, Puerto Rico, a 14 de febrero de 2024.

Grace M. Grana Martínez
Jueza del Tribunal de Apelaciones